

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

ENTERED
07/02/2018

| | | |
|---|---|---|
| In re: | § § | Chapter 11 |
| GEOKINETICS INC., *et al.*, | § § | Case No. 18-33410 |
| Debtors.¹ | § § § | (Jointly Administered) |

### ORDER (A) APPROVING AUCTION AND BID PROCEDURES, INCLUDING BID PROTECTIONS, (B) AUTHORIZING AND SCHEDULING AN AUCTION FOR THE SALE OF THE DEBTORS' ASSETS; AND (C) GRANTING RELATED RELIEF

[Related to Docket No. 32]

The above-referenced debtors and debtors-in-possession (collectively, the "Debtors") filed their *Emergency Motion* (the "Bid Procedures and Sale Motion")² *(I) for Entry of an Order (A) Approving Auction and Bid Procedures, Including Bid Protections, (B) Authorizing and Scheduling an Auction for the Sale of the Debtors' Assets, and (C) Granting Related Relief* (the "Bid Procedures Order"); *and (II) for Entry of an Order (A) Approving the Sale of the Debtors' Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests, (B) Authorizing the Assumption and Assignment of Executory Contracts and Unexpired Leases, and (C) Granting Related Relief* (the "Sale Order"). The Court has jurisdiction over the Motion and the relief requested in the Motion pursuant to 28 U.S.C. § 1334 and venue is proper in this District pursuant

---

¹ The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows:  Geokinetics Inc. (0082); Geokinetics USA, Inc. (0110); Geokinetics Processing, Inc. (9897); Geokinetics Holdings USA, Inc. (6645); Geokinetics International Holdings, Inc. (8468); Geokinetics International, Inc. (2143); Geokinetics Exploration, Inc.; Geokinetics (Australasia) Pty. Ltd.; and Advanced Seismic Technology, Inc. (9540).  A complete list of the Debtors' federal tax identification numbers and additional information regarding these cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://cases.primeclerk.com/geok.  The Debtors' address is 1500 Citywest Boulevard, Suite 800, Houston, Texas 77042.

² Except as otherwise provided in this Order, capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.

6708886v1

to 11 U.S.C. § 1408. The Motion is a core proceeding pursuant to 28 U.S.C. § 157(b)(2) and the Court may enter a final order on the Motion. The relief requested by the Motion is in the best interests of the Debtors, their estates, creditors, stakeholders, and other parties in interest and the Debtors' gave sufficient and proper notice of the Motion and related hearings. Upon consideration of the Motion and after hearing and considering all evidence in support of the Motion during proceedings before this Court, the Court finds that good cause exists to grant the requested relief.

1. Pursuant to Bankruptcy Rule 7052, made applicable by Bankruptcy Rule 9014, the Court makes the following **FINDINGS OF FACT AND CONCLUSIONS OF LAW**:

a. Notice of the Motion and any related hearings was sufficient under the circumstances of this case and complied with all applicable requirements of the Bankruptcy Code, the Bankruptcy Rules, and the Bankruptcy Local Rules. Accordingly, no further notice of the Motion and any related hearings or this Order is necessary or required.

b. The Bid Procedures were proposed by the Debtors in good faith with the goal of maximizing the value of their assets for the benefit of all creditors of their estates.

c. The Debtors have demonstrated a compelling and sound business justification both in the Motion and on the record at the hearing for the Court to grant the relief requested in the Motion related to the entry of an order approving the Bidding Procedures, which justification is incorporated by reference herein.

d. Approval of the Breakup Fee, including the APA Expenses, and entry of this Order is (i) a necessary and appropriate inducement to ensure the Stalking Horse Bidder will continue (1) with its initial offer which serves as a "floor" for bidding at the Auction, and (2) to pursue the Stalking Horse Agreement and consummate the transactions contemplated thereby, and (ii) a condition precedent to closing the transactions contemplated by the

Stalking Horse Agreement. The Break-Up Fee has been negotiated by the Debtors and the Stalking Horse Bidder and their respective advisors at arms' length and in good faith.

e.  All objections, if any, to the Motion that relate to the entry of an order approving the Bidding Procedures that have not been withdrawn, waived, or settled as announced to the Court at the hearing on the Bidding Procedures or by stipulation filed with the Court are overruled except as otherwise set forth herein.

**IT IS THEREFORE ORDERED THAT:**

1.  The Motion is granted to the extent set forth in this Order. Any objections to the Motion that have not been resolved or withdrawn are hereby overruled on the merits. The following "Bid Procedures" are hereby approved and shall be used in connection with the proposed sale of the Purchased Assets:

> **Asset Purchase Agreement**. Subject to the terms of this Order, the form of Stalking Horse Agreement attached to the Motion as **Exhibit B** is approved.
>
> **Assets to be Sold**: The Debtors seek to sell substantially all of their Assets, as described in the Stalking Horse Agreement (the "Purchased Assets"); with the exception to certain assets which are excluded as specified in the Stalking Horse Agreement (the "Excluded Assets"). Qualified Bids (as defined below) may provide for the purchase and/or assumption and assignment, as applicable, of assets, unexpired leases, and/or executory contracts which are treated as Excluded Assets in the Stalking Horse Agreement. Information concerning the Excluded Assets may be obtained as part of the due diligence that is available under these Bid Procedures.
>
> **Free and Clear of Any and All Claims and Interests:** Except as otherwise provided in the Stalking Horse Agreement or another successful bidder's purchase agreement, all of the Debtors' right, title, and interest in and to the Purchased Assets subject thereto shall be sold free and clear of all liens, claims and interests (collectively, the "Encumbrances") to the maximum extent permitted by Section 363 of the Bankruptcy Code (other than Permitted Liens and Assumed Liabilities), with such Encumbrances to attach to the proceeds of the Sale with the same validity and priority as such Encumbrances applied against the Assets.
>
> **Bid Deadline.** On or before or before 5:00 p.m. Central Time on July 12, 2018 (the "Bid Deadline"), Qualified Bids must be delivered to (a) the Debtors'

proposed counsel at jhiggins@porterhedges.com; and (b) counsel to any official committee appointed in these cases.

**Qualified Bidders**. Only Qualified Bidders may participate in the bidding process. To become a Qualified Bidder, by the Bid Deadline, a potential bidder must (i) execute and deliver to the Debtors a confidentiality agreement prepared by the Debtors (a "Confidentiality Agreement"), (ii) deposit with the Debtors, in cash, 10% of the bidder's proposed purchase price (each, "Alternative Bidder's Deposit"), which deposit shall be refundable as described below;  (iii) submit to the Debtors an unqualified and binding cash bid in an amount of total consideration that is equal to or exceeds $21,100,000 (which is equal to the Stalking Horse bid, plus the Break-Up Fee (defined below), plus the initial Bid Increment (defined below)), less cure costs and purchase price adjustments as set forth in the Stalking Horse Agreement, along with an executed written agreement that is substantially identical to the form of the Stalking Horse Agreement with a redline showing any changes from the Stalking Horse Agreement, and (iv) submit to the Debtors financial and other information, including support indicating the availability of funds to satisfy its purchase price, sufficient to allow the Debtors to make a reasonable determination as to such bidder's ability to consummate a sale as contemplated herein with a closing date no later than the DIP Maturity Date (each, a "Qualified Bid").

For a bid to be deemed a Qualified Bid, it (a) may not be conditioned on obtaining financing or any internal approval, or on the outcome of due diligence; (b) must propose to purchase all or substantially all of the Purchased Assets; (c) identify any and all executory contracts and unexpired leases of the Debtors that the bidder wishes to have assumed and assigned; (d) shall include written evidence reasonably acceptable to the Debtors demonstrating appropriate corporate authorization to consummate the proposed alternative transaction; (e) must fully disclose the identity of each entity that will be bidding for and purchasing the Debtors' assets or otherwise participating in connection with such bid; and (f) shall expressly provide that the bidder is prepared to consummate the transaction promptly following entry of the Sale Order  and that the offer reflected in such bid shall remain open and irrevocable until the conclusion of the Auction.  For the avoidance of doubt, and as set forth below, the Stalking Horse Agreement is a Qualified Bid and the Stalking Horse Bidder is a Qualified Bidder.

**Due Diligence.** Only parties that execute a Confidentiality Agreement with the Debtors and that the Debtors determine have a good faith intent to place a Qualified Bid shall be eligible to receive due diligence information and access to the Debtors' electronic data room and to additional non-public information regarding the Debtors. The Debtors will provide to such parties reasonable due diligence information, as requested by such parties in writing, as soon as reasonably practicable after such request, and the Debtors shall post all written due diligence provided to any party to the Debtors' electronic data room.  The due diligence period will end on the Bid Deadline, and subsequent to the expiration of the due

diligence period, the Debtors shall have no obligation to furnish any due diligence information.

The Debtors shall not furnish any confidential information relating to the Assets, liabilities of the Debtors, or the Sale to any person except to such party or to such party's duly authorized representatives to the extent expressly permitted by the applicable Confidentiality Agreement. The Debtors and their advisors shall coordinate all reasonable requests from such parties for additional information and due diligence access; provided that the Debtors may decline to provide such information to such parties who, at such time and in the Debtors' reasonable business judgment after consultation with their advisors, have not established, or who have raised doubt, that such party intends in good faith to, or has the capacity to, consummate the applicable Sale. Requests for due diligence should be directed to General Counsel for the Debtors, Jessica Palomino (jessica.palomino@geokinetics.com) and counsel for the Debtors (apower@porterhedges.com).

**Due Diligence from Qualified Bidders.** Each Qualified Bidder shall comply with all reasonable requests for additional information and due diligence access requested by the Debtors or their advisors regarding the ability of the Qualified Bidder to consummate the applicable Sale. Failure by a Qualified Bidder to comply with such reasonable requests for additional information and due diligence access may be a basis for the Debtors to determine that such bidder is no longer a Qualified Bidder or that a bid made by such Qualified Bidder is not a Qualified Bid.

The Debtors and each of their respective advisors and representatives shall be obligated to maintain in confidence any confidential information in accordance with any applicable Confidentiality Agreement, except as otherwise set forth in these Bidding Procedures. Each recipient of confidential information agrees to use, and to instruct their advisors and representatives to use, such confidential information only in connection with the evaluation of Bids during the bidding process or otherwise in connection with these Chapter 11 Cases or in accordance with the terms of any applicable Confidentiality Agreement.

Notwithstanding the foregoing and the provisions contained in any applicable Confidentiality Agreement, the Debtors and the Debtors' advisors may disclose confidential information: (i) with the prior written consent of such bidder and the Debtors; (ii) to the applicable bidder; and (iii) as otherwise required or allowed by any applicable confidentiality agreement with respect to a particular bidder or other agreement, law, court or other governmental order, or regulation, including, as appropriate, to regulatory agencies.

**Communications with Qualified Bidders.** Notwithstanding anything to the contrary in these Bidding Procedures, all direct communications between and amongst Qualified Bidders shall involve the Debtors and the Debtors' advisors. No

Potential Bidder shall communicate with any other Potential Bidder absent prior written consent from the Debtors.

**Notice of Qualified Bidders**. On the next business day following the Bid Deadline, the Debtors shall file a notice with the Court identifying all Qualified Bidders. The Debtors shall serve a copy of the notice and the corresponding bids on all the contract parties provided by each Qualified Bidder by (a) electronic mail or (b) to the extent a Qualified Bidder fails to provide an email address, overnight delivery.

**Stalking Horse Bidder**. The Stalking Horse Agreement shall be deemed a Qualified Bid. The Stalking Horse Bidder is and shall be deemed to be a Qualified Bidder. For the avoidance of doubt, the Stalking Horse Bidder shall not be required to make a deposit. If no other Qualified Bids are received, the Stalking Horse Bidder shall be deemed the Highest and Best Bid (as defined below) and the Debtors shall seek approval of a sale to the Stalking Horse Bidder on the terms of the Stalking Horse Agreement at the Sale Hearing.

**Auction.** If one or more timely Qualified Bids are received by the Bid Deadline, the Auction for the Purchased Assets will be conducted on July 16, 2018, starting at 10:00 a.m. Central Time at the offices of Porter Hedges LLP, 1000 Main Street, 36th Floor, Houston, Texas 77002. Only Qualified Bidders may participate in the Auction and only the Debtors, Qualified Bidders, the prepetition secured lenders, the DIP Lenders, and any official committee, in each case along with their representatives and advisors, shall be entitled to attend the Auction (such attendance to be in person). All Qualified Bidders, or their authorized representatives with authority to bind the Qualified Bidder, must be physically present at the Auction. At the commencement of the Auction, the Debtors shall announce the bidding order, which shall be based on: (i) the amount of the Qualified Bidder's bid (from low to high); and (ii) if Qualified Bids are identical, the time the Qualified Bids were delivered to the Debtors (the first such received identical bid going first in the Auction). The initial minimum overbid increment at the Auction shall be in the amount of not less than $100,000 cash (the "Bid Increment"). At the Debtors' discretion the Debtors can change or alter the bidding order, the amount of the Bid Increment, or any subsequent overbid amount, and allow or disallow Qualified Bidders to pass in any given round and otherwise conduct the Auction in a way that the Debtors reasonably believe will maximize value. All bidding for the Purchased Assets will be concluded at the Auction and there will be no further bidding at the Sale Hearing.

**Selection of the Highest and Best Bid.** At the conclusion of the Auction, in consultation with its prepetition secured lenders and the official committee of unsecured creditors, if any, the Debtors will announce the highest and/or best Qualified Bid submitted by a Qualified Bidder (the "Successful Bidder", and such highest and/or best Qualified Bid, the "Highest and Best Bid") and the next highest and/or best Qualified Bid (the "Back-Up Bid") submitted by a Qualified Bidder (the "Backup Bidder"). In making this decision, the Debtors may consider,

without limitation, the amount of the purchase price, including, for the avoidance of doubt, whether such bid provides funds sufficient to satisfy any prepetition secured obligations, the form of consideration being offered, the risks and likelihood of the Qualified Bidder's ability to close a given transaction, the proposed timing thereof, and rights of such Qualified Bidder and the Debtors with respect to the termination thereof, the amount, type and nature of any changes proposed to be made to the Stalking Horse Agreement, and the net benefit to the Debtors' estate, including the Break-Up Fee and APA Expenses. The Debtors will seek Court approval of the Highest and Best Bid at the Sale Hearing. If for any reason, the Qualified Bidder submitting the Highest and Best Bid fails to timely consummate the purchase of the Purchased Assets, the Debtors may seek to consummate a sale based on the Back-Up Bid without further approval by the Court. The Back-Up Bid and the obligation of the party submitting such bid to consummate the purchase of the Purchased Assets shall remain open and in full force, including with respect to the Alternative Bidder's Deposit, until the close of a sale of the Purchased Assets to the party making the Highest and Best Bid or the party making the Back-Up Bid.

Upon conclusion of the Auction, the Debtors shall provide the United States Trustee, the official committee of unsecured creditors, if any, and the prepetition secured lenders with a copy of a transcript of the Auction along with a tally of all bids received at the Auction.

**Sale Hearing**. A hearing to approve a sale based on the Highest and Best Bid shall take place on July 19, 2018, at 2:30_p.m. in Courtroom 400, on the fourth floor of the United States Courthouse, 515 Rusk, Houston, Texas 77002.

**Deadline to Object to Sale**. All objections to the proposed sale must be filed two (2) days prior to the Sale Hearing.

**Return of Deposits**. Within three (3) business days after the conclusion of the Auction, the Debtors shall return by check or wire the full amount of each Alternative Bidder's Deposit submitted by a party that is not selected as submitting the Highest and Best Bid or the Back-Up Bid. If the sale of the Purchased Assets is consummated with the party submitting the Highest and Best Bid, the Alternative Bidder's Deposit of the party that is declared the Back-Up Bid shall be returned by check or wire transfer within three business days after the closing of the sale to the party submitting the Highest and Best Bid.

**Right to Credit Bid.** The DIP Lenders shall have the right, subject in all respects to the Bankruptcy Code and the DIP Order, to credit bid all or any portion of their allowed claim secured by the Debtors' assets under the DIP Facility at the Auction and pursuant to Section 363(k) of the Bankruptcy Code or other applicable law, in accordance with the applicable provisions of the applicable debt documents. Such secured creditors shall be a Qualified Bidder to the extent that such creditors otherwise comply with the requirements set forth herein and the Bankruptcy Code. For purposes of its Qualified Bid and subject to the DIP Order, the Stalking Horse

Bidder shall be permitted to credit the amount due under the DIP Financing including, at its sole option, a cashless exchange of the DIP Loans for new notes issued by the Stalking Horse Bidder.

Sale is "As Is/Where Is". Except as otherwise provided in the Stalking Horse Agreement, any sale agreement with respect to the Highest and Best Bid or a Back-Up Bid (as defined below) or any order approving the Sale, any and all portions of the Assets sold pursuant to the Bidding Procedures shall be conveyed at the closing of the Sale in their then-present condition, "As is, with all faults, and without any warrant whatsoever, express or implied."

**Notice of Bidding Procedures, Auction, and Sale Hearing**. On the next business day following the entry of the Bidding Procedures Order, the Debtors will serve by first-class mail a copy of the Bidding Procedures and a notice containing the date of the Bid Deadline, Auction, the Sale Hearing, and the deadline to file objections to the sale to: (i) all potential purchasers previously identified or solicited by the Debtors and their professionals; (ii) the Office of the United States Trustee; (iii) the Internal Revenue Service and all taxing authorities in each jurisdiction applicable to any Debtor; (iv) all parties who are known to possess or assert a lien, claim, encumbrance or interest in or upon any of the Purchased Assets; (vi) all applicable United States, state and local regulatory, environmental or taxing authorities, recording offices and any other governmental entity that has a reasonably known interest in the Purchased Assets, (vii) all non-debtor parties to the Desired 365 Contracts (defined below); (viii) the 50 largest consolidated unsecured creditors of the Debtors; and (ix) all parties on the most current master service list filed in this case. Such notice shall be sufficient and proper notice of the sale with respect to known interested parties.

**Stalking Horse and Bid Protections**. To the extent payable under, and in accordance with, the Stalking Horse Agreement, including any amendments, supplements or modifications thereto, in the event that the transaction contemplated by the Stalking Horse Agreement, including any amendments, supplements, or modifications thereto, fails to close (x) other than as a result of a breach on the part of Stalking Horse Bidder, Debtors shall reimburse the Stalking Horse Bidder's out-of-pocket costs, fees and expenses, not to exceed $1,000,000.00 (including legal, financial advisory, tax, consulting, accounting and other similar costs, fees and expenses) associated with the transaction (the "APA Expenses"), and (y) other than as a result of a breach on the part of the Stalking Horse Bidder and the Debtors sell the Purchased Assets (or substantially all of its assets or equity) to a third party within one (1) year thereafter, the Debtors shall pay to the Stalking Horse Bidder a break-up fee equal to 5.0% of the purchase price of the Stalking Horse Bid (together with the APA Expenses, the "Break-Up Fee"). Moreover, all expenses incurred by the Stalking Horse Bidder in connection with the Sale shall be afforded superpriority administrative expense status. The Debtors shall reimburse the Stalking Horse Bidder's out-of-pocket costs, fees and expenses (including legal, financial advisory, tax, consulting, accounting and other similar costs, fees and

expenses) incurred in connection with the Stalking Horse Agreement, the Sale, and any post-closing planning.

2. The Debtor's granting and payment of the Bid Protections pursuant to this Bidding Procedures Order and the Stalking Horse Agreement are: (a) actual and necessary costs and expenses of preserving the Debtors' estates within the meaning of sections 503(b) and 507(a) of the Bankruptcy Code, (b) are of substantial benefit to the Debtors' estates and creditors and all parties in interest herein, (c) are fair, reasonable, and appropriate, including in light of the size and nature of the proposed transactions, including the sale of substantially all of the assets of the Debtors, and the substantial efforts that have been and will be expended by the Stalking Horse Bidder (d) have been negotiated by the parties and their respective advisors at arm's-length and in good faith, and (e) are a material inducement for, and a condition necessary to ensure that, the Stalking Horse Bidder pursues the purchase of substantially all of the assets of the Debtors.

3. Except for the Stalking Horse Bidder, no other party submitting an offer or a competing Qualified Bid to purchase substantially all of the assets of the Debtors shall be entitled to any expense reimbursement, break-up, termination, or similar fee or payment.

4. The Bid Protections are necessary to maximize the value of the Debtors' estates. Without the Bid Protections, the Stalking Horse Bidder would not pursue the purchase of substantially all of the assets of the Debtors, likely resulting in the Debtors realizing a lower price for such assets.

5. Objections (if any) to approval of a sale to the party submitting the Highest and Best Bid or to approval of a proposed sale of the Purchased Assets, shall be in writing, shall set forth the name of the objecting party, the basis for the objection and the specific grounds therefor, and shall be filed with the Court on or before 5:00 p.m. (local time in Houston, Texas) two days prior to the Sale Hearing.

6.      Any objection not filed and served in accordance with the preceding paragraph shall be deemed waived and shall be forever barred.

7.      The failure of any party to file and serve an objection to the sale as ordered and directed herein shall be deemed the consent of such party to the granting of the Motion and the sale and transfer of the Purchased Assets.

8.      No later than 15 (fifteen) days prior to the Sale Hearing, the Debtors will file with the Court and serve on each non-debtor party to an executory contract or unexpired lease a notice setting forth the amount of cure owed thereunder according to the Debtors' books and records (the "Cure Notice"). The Cure Notice shall state the cure amount that the Debtors believe is necessary to assume such contract or lease pursuant to Bankruptcy Code section 365 (the "Cure Amount"), and notify each non-debtor party that such party's lease or contract may be assumed and assigned to the Stalking Horse Bidder or to the Successful Bidder to be identified at the conclusion of the Auction.

9.      No later than seven (7) days prior to the Sale Hearing, any objection to the Cure Amount must be filed with the Court (the "Cure Objection Deadline").  Any objection to the Cure Amount must state with specificity what cure the non-debtor party to the executory contract or unexpired lease believes is required with appropriate documentation in support thereof. If no objection is timely received, the Cure Amount set forth in the Cure Notice shall be controlling notwithstanding anything to the contrary in any executory contract, unexpired lease or other document as of the date of the Cure Notice; the non-debtor party to the executory contract or unexpired lease shall be deemed to have stipulated that the Cure Amount set forth in the Cure Notice is correct; the non-debtor party shall be forever barred, estopped and enjoined from asserting or claiming that any additional amounts are due or other defaults exist, that conditions to

assignment must be satisfied under such contract or lease or that there is any objection or defense to the assumption and assignment of such contract or lease, including any argument that there exist conditions to assumption and assignment that must be satisfied under such contract or lease or that any required consent to assignment has not been given.

10. The Debtors are authorized to incur and pay the Break-Up Fee, including the APA Expenses, to the extent payable under the Stalking Horse Agreement and in accordance with the Bid Procedures.

11. The Bid Procedures and the Bid Protections are fair and reasonable, are reasonably calculated to produce the best and highest offers for the Purchased Assets, and will confer actual benefits upon the Debtors' estates. The Bid Procedures and the Bid Protections represent an exercise of the Debtors' sound business judgment and will facilitate an orderly sale process.

12. The Debtors are hereby authorized to execute any additional or supplement document incident to the relief granted pursuant to this Order.

13. All Non-Debtor contract counterparties reserve any and all rights, claims, objections and defenses with respect to any assumption, sale and assignment of such contracts.

14. Notwithstanding Bankruptcy Rules 6004, 6006, or otherwise, this Order shall be effective and enforceable immediately upon entry and its provisions shall be self-executing. To the extent applicable, the stays described in Bankruptcy Rules 6004(h) and 6006(d) are hereby waived.

15. The terms of this Order shall control to the extent of any conflict with the Motion.

**Signed: July 01, 2018.**

_____
DAVID R. JONES
UNITED STATES BANKRUPTCY JUDGE